May it please the court, Fred Rowley Jr. for Plains All American Pipeline. The district court's class certification order should be reversed because it rests on multiple legal errors. First, the district court treated two critical liability elements, injury and proximate causation, as damages issues that could be determined individually. Secondly, the court recognized that whether individualized questions predominate as to injury and causation was a, quote, vital issue. And it also recognized that at least some class members were not injured as a result of the pipeline shutdown. But the court went on to reason that the question of whether any individual worker suffered damages could be addressed if necessary at a later date. And that was legal error. Injury and causation are distinct from damages. And that's true as a matter of both class certification law and the substantive law of negligence that covered the claims. This court's precedents make clear that individualized issues of injury and proximate causation for closed class certification, even if damages must sometimes be determined on an individual-by-individual basis in some cases. The district court excused the plaintiff's failure to offer common proof of injury and causation by invoking an exposure theory that this court has developed in a line of class action cases involving California's UCL. The reason why the exposure theory makes sense in those cases, of course, is because under the UCL, the plaintiff doesn't have to show injury and proximate causation. It's enough for the plaintiff to establish that there was a likelihood of deception, that the public was likely to be deceived. That is not the case with the kind of negligence theories that the plaintiff is asserting here. Injury and proximate causation are essential elements of negligence, and so they can't be collapsed into damages. And certainly exposure to the risk of injury can't be enough for class certification the way it might be in a UCL class action where you don't have to establish either of those elements. One way to think about this is in an individual UCL action. So just one plaintiff gets the defendant asserting misrepresentations in violation of the unfair competition law. In that situation, exposure would be enough to establish liability, exposure to a misrepresentation. But that's not enough in an individual negligence action, and for that reason, the class action device can't be used to modify or sweep aside the essential elements and to aggregate the claims. So that fundamental error we submit grounds the district court's reasoning. It's the reason why the district court collapsed injury and causation into damages and committed that legal error as well. We also submit that the district court, in the way that it analyzed the offer of proof, so the common offer of proof, which really rests on Dr. Rupert's analysis of job loss. So even though the class extends to businesses as well as employees, Dr. Rupert only analyzed job loss, so it's specific to a subset of the class, doesn't even cover the entire class. That aggregate analysis of job loss, and I would note that he only concluded that 34% of the oil industry employees that he analyzed would have suffered a job loss. That aggregate analysis wouldn't be enough to establish liability in an individual case. So we also have a problem under both Comcast and Tyson Foods, because that expert report, that economic model, isn't sufficient to support class-wide injury, and it's also not tailored to the proposed class as certified by the district court. It doesn't cover businesses. It actually is over-inclusive as well, because it includes folks who were not employed as of May 19, 2015, because it anticipates that there would have been jobs created. So you have both a tailoring problem under Comcast. Well, what do you think would be the more appropriate class definition? Your Honor, that's not before the court. The plaintiff did have a couple of opportunities to propose different classes. So initially the class was predicated upon dependence upon the oil industry. That was the first class definition. The district court rejected that as overbroad. And then the plaintiff attempted to narrow the class by fixing a limitation based upon contracts. So there has to be a contract. The problem with that is that it isn't a meaningful limitation on the scope of the class, because the contract can be with anyone. So in the answering brief, in the red brief, the plaintiff suggests that the contract has to be with the owner of the platform or the owner of the onshore facilities. But if you look at the class as defined by the plaintiff and as certified by the district court, that limitation is not present. And indeed, the district court acknowledged repeatedly in its certification order that the class would include subcontractors. So to get back to Your Honor's question, they've had a couple of opportunities. To whom do you think that your client owed a duty of care? We don't, Your Honor. And indeed, the SoCal gas case that was issued last week I think makes that very clear. The district court thought that the question of whether the economic loss doctrine applied was a close one. That was litigated at the summary judgment stage. The district court thought that that first J.R. factor, intends to benefit, wasn't satisfied. We argued that that was dispositive, and the court thought that there were a couple of other cases at that time on the other side. And so the court thought it was a close question and let the claims go forward. We submit that SoCal gas operates as a bar on those claims. So what does Southern California Gas do for, how do we implement, if at all, Southern California Gas here? Because it looks like that goes to the merits. Yes. And if we were to affirm the district court here, you'd run right back in and file a motion for summary judgment. That's right, Your Honor. So we do think that it is, first on the merits, it will operate as a bar, because the California Supreme Court rejected the availability of claims like this seeking purely economic recovery. It did address the question of special relationship. It's a little bit of an aside, but it does refer to the J.R. factors and talks about what might qualify as a special relationship. It does, Judge Bivey, and we certainly think that the decision would have that effect, and on remand we would seek to raise it if the court didn't address it. We do think that the question of whether there's a special duty does bear on the certification order, because the district court considered whether the other factors, it didn't deem the first J.R. factor dispositive, so it went on to analyze the other factors bearing on whether there's a special duty and found that there weren't individual issues. We thought that there were individual issues raised by those factors, and so this legal error bearing on the way the district court looked largely at foreseeability. So if we were to read closely the Southern California gas and focus on the question of special relationship, is there any way that this court should force the district court to narrow the subclass and then you can go off and argue about summary judgment? So, Your Honor, we think that the answer is no. There's a couple of reasons for that. The first is one of the things that the plaintiffs have sought to do in their answering brief, in the red brief, is to treat this as a 23C4 class, an issue class. They did not ask for a 23C4 certification in the district court. They asked for a 23B3 predominance class, and the district court certified it only as a 23B3 predominance class. This is crystal clear from the court's order. It says the court concludes that the proposed oil industry subclass satisfies the requirements of Rule 23A and Rule 23B3. It hereby certifies the oil industry subclass under 23B3. So it's not a 23C4 class. The plaintiffs would have had to cross-appeal, as indeed the plaintiff did in Martin, if it wanted to argue that the class should have been certified under some other provision of Rule 23, and they didn't do that. Let's suppose, for purposes of my question, that I think that the subclass that's been defined is much, much too broad. Sure. So for companies that may have contracts with the oil platforms or onshore providers to provide catering services or long-distance services or whatever, that it clearly is too broad as to them. Sure. But that I thought that there might be a possibility that workers on the platform, individual employees, might be in that special relationship in the same way that the restaurant was in the JARE case. Sure. If I thought that was the case, then what should I do? Your Honor, I think you would still need to reverse on the exposure theory. So this is the theory that is the basis of the district court's order. In two different places on the load-bearing part of the analysis, the court says, because the plaintiffs were exposed to the possibility of economic harm from the shutdown.  Yes, Your Honor. But if we were just to focus on the employees, that would get us then right squarely to the question of whether Dr. Rupert was adequate. So, Your Honor, yes, to get back to your question, I think you'd have to reverse on the exposure theory. And then I still think if you're talking about, I don't think it would be appropriate for this court to offer a proposed class for the first time on appeal. I suppose they could seek to file a renewed motion for class certification and try to narrow the class yet again. We submit that if the court reverses on this class certification order and it goes back to the district court, at that point it would be appropriate for the district court to consider the effect of Southern California gas, that decision, and that that would actually be the appropriate context in which the court could consider it when there's just the plaintiff's claims, not a certified class, and whether summary judgment is appropriate. But we don't think that it would be proper for the court to consider what a suitable class would be, whether it's under 23C4 or under a more limited 23B3 class, for the first time on appeal. And, indeed, in the answering brief, that is another thing that the plaintiffs try to do, is to narrow their class by reading the contract limitation, which we submit is no limitation at all because it could be with anybody, as being a requirement that there be a contract with the onshore facilities or with the platforms. And so we don't think that the court can or should graph that kind of limitation or any other limitation for the first time on appeal. I would also note that even if the court tried to limit the class in that way, you would still have overwhelming individual issues. And that's because the businesses that would be embraced by the class, even if you just limited it to, for example, direct contractors, you have a wide range of businesses that would be encompassed by that class, not just companies that provided direct oil-related or... Yes, Your Honor. Your argument is basically for an economic damages claim. There is no class. Your Honor, I think that... That could be certified. That's your basic argument. I don't think that the court needs to say that. I'm asking you if you're saying that. I think it would be, I think that especially after SoCalGas, Your Honor, that that class would have to be very narrowly defined. I mean, even in SoCalGas, there's language that suggests that the economic loss doctrine and that claim seeking purely economic recovery, that those claims are limited to the kind of situation you saw in Biancongia, where you have an intended beneficiary who suffers an economic injury as a result of a negligently performed contract. So I do think that that decision has narrowed claims for economic loss as a matter of substantive California law. But I think your question is addressed to class certification principles. And I think that it is very hard to certify a class like this simply because claims for economic loss, as the California Supreme Court observed, are inherently indeterminate. The court notes that the ripple effects are essentially endless. In an interconnected economy, they said, you know, you have wave after wave of successive economic consequences. And so ensuring some kind of class cohesiveness, ensuring that a Verizon employee suffered the same kind of injury for the same reason as an oil platform worker, that is very hard to do in the aggregate. What you would need is a plaintiff-specific individual trial. And so we do think that the nature of these claims, because they're so broad, coupled with the class as defined here, because it is also broad, makes it impossible to have an aggregate trial and that class treatment is manifestly inappropriate. Now, there were other class actions and lawsuits that arose from this pipeline disaster. Yes, Your Honor. There were. Of various sorts. There are two other certified classes pending in the district court. One of them is a class of property owners and another is a class of commercial fishermen. So there's two class actions pending in the district court now. This one is limited to the oil industry. And I think if you look at the district court's order, the district court acknowledges that this is a very broad class. The district court notes, for example, that the proposed subclass would include a diverse collection of parties potentially scattered across the globe. So it acknowledges that we're talking about class of potential plaintiffs that have only a tangential relationship to this oil industry. It also noted that many of the class members, it said at least some class members were not injured as a result of the pipeline shutdown. But it also made a specific observation about businesses. It said there'd be myriad businesses, some that would be unaffected. It acknowledged that. And I think the fact that there are so many, there would be so many demonstrably uninjured plaintiffs just goes to the difficulty of certifying a class where you have such varied economic relationships to the platforms and to the onshore facilities. And with that, I'd like to reserve four minutes unless the court has more. Good morning, Your Honors. May it please the court. My name is Robert Nelson. I represent the class and appellees today. I'd like to begin, Your Honors, reminding the court of the standard of review on a Rule 23F petition. It is an abuse of discretion standard. And the reason why it's an abuse of discretion standard is the trial court is entrusted with controlling and managing its docket. It has to live with its decisions on class certification one way or the other. When there is a grant of certification, according to JustFilm and several other Ninth Circuit authority, there is a noticeably more deferential standard that's in play. And the reason I would submit, Your Honors, is that when a trial judge has determined that the class mechanism is the superior method to proceed, it should be given deference. It has to manage its docket. It has to live with the consequences. And so when you're faced with a 23F petition, and particularly with a grant of certification, there really must be a clear abuse of discretion and we submit that not only is there not a clear abuse of discretion, but that Judge Gouthiere is engaged in the correct and appropriate, rigorous analysis under Rule 23. Counsel has focused in their argument on Rule 23B3, predominance. You'll recall that in Dukes, Justice Scalia made very clear that even a single clause in Rule 23B3, predominance, does not mean that a single issue will suffice if it is apt to drive the resolution of the litigation. And here we have many, many issues, key liability issues, that apply across the board. What occurred on May 19, 2015? Why did this rupture take place? What happened in the years prior to the rupture? What kind of imaging techniques? Yeah, Counsel, you're at a pretty high level of generality. It seems to me that after Southern California Gas, that you're in deep trouble. Maybe you want to get to that. I'm happy to get to that, Your Honor. Southern California Gas obviously is an important decision, and it impacts the Jair analysis. I would submit to you, Your Honor, and we said this in our letter brief, that Jair, that the trial court did actually engage in the Jair analysis and went through all six factors. Right. And the critical one, I think, for our purpose, is going to be the special relationship. Right. And I would submit, Your Honor, and I think you said it previously, that for you to make a ruling on whether or not we meet the special exception, that is absolutely a merits determination for this case. Wait. The determination of a special relationship is a merits determination? I would submit, Your Honor. Well, why did the judge reach it, then, on a class certification question? The judge reached it in connection with his summary judgment. He looked at it in connection with class certification to make sure that he could, that the class was sufficiently cohesive, and he could answer those six questions. Right. Isn't that what's on appeal now? You're telling us that we can't consider the special relationship, that it's outside the bounds of what this court could look at today? I would submit, Your Honor, that that is a substantive issue, whether or not the class can meet the special relationship exception. It is not... Well, being a substantive issue doesn't mean that the panel can't reach substantive issues today. Well, the parties... It was a substantive issue relative to the question of whether the class, the subclass, was properly certified. I thought that was the issue before us today. Is there something different that's before us? Your Honor, obviously... You just went through a standard of review, counsel, on asking us on an abuse of discretion standard. But my understanding of what we were reviewing was whether the district court abused its discretion when it decided that there was a special relationship such that he was willing to certify your class. Right. And I would submit, Your Honor, that we have not briefed this issue in connection with this Rule 23F petition. I could argue, and we will argue below, that the purpose of the pipeline, the sole purpose of the pipeline, was for the movement of oil. And the only reason these platforms exist is to pump oil, is to utilize that pipeline. The pipeline itself has no intrinsic value. There's no purpose beyond moving oil through it. The employees and those who contracted to support those employees on the platforms and the processing facilities, they engaged in whatever it took to make sure that the pipeline was utilized. The pipeline doesn't have a purpose without those workers or without those employees. Counsel, can I just go back? Because you did brief this. I mean, you submitted a 28J letter, and you made arguments about how Judge Gutierrez engaged in precisely the same approach that the Supreme Court in SoCalGas reaffirmed. That's correct, and he did so in the context of the summary judgment motion. But you just told Judge Bybee you didn't brief it, but you did brief it. I mean, you submitted a 28J letter on it. We provided, I don't know, 350 words. Maybe you think it wasn't enough briefing. I clearly think it was not enough. But you did submit briefing. No, but the point is we have not briefed the issue whether or not there was a special relationship. Well, argue it to me. I mean, if you look at this class, to me it seems very attenuated, because it just seems like there's no limits on this class. Now, it seems like if there's a special duty limit, how would it apply? Like, how would you narrow this class to embrace only those where there's a special relationship? I would like to address that in the context of what Judge Gutierrez did. And what he found was that by virtue of the contractual relationship that each and every plaintiff will have, that represents, that makes the class cohesive. The defendants want to say that everybody has contracts with these facilities. It's just not true. Tucker, their accountant's declaration, talks about thousands and thousands of subcontracts. It's just not true. And what he looked at were any entity with whom Exxon, for example, made a credit card transaction with. That has nothing to do with whether or not there was a contract. In fact, he has not analyzed any contractors in his assessment of the thousands of potential class members that had a contract. And so I don't necessarily agree that the class is so expansive. And the contractual limitation is an important one. So how many contracts do you think we are talking about? I would say less than a thousand, Your Honor. Okay. And give me some examples outside of the employee context. How many employees do you think we're talking about, by the way? I would say approximately 500. Okay. So 500 employees. So of the other than 500 contracts, what are they? Does this include Verizon, AT&T, pest control, caterers? Just give me some examples. Well, the example I would provide to you, Your Honors, is our class representative, Tractide Marine. They contracted with Tidewater to provide fuels to the crafts that service the platforms. That's an example of an entity that contracted to provide. And on that one, unless you've got a special relationship, you're facing a motion for summary judgment that's very likely to be granted. You know, we are facing a summary judgment motion, I'm sure. They'll renew it immediately. I mean, I hope you're willing to admit to the court that Southern California Gas didn't do you a lot of favors. I agree that that case did not do us a lot of favors. It's not helpful at all. All right. But I want to I appreciate where you're coming from. And I understand that Southern California Gas is not your biggest problem here today, because that really does go to the merits. But the merits are a little bit wound into the question of the special relationship. And the special relationship is wound into the other questions about predominance of the issues. And that, of course, goes to Dr. Rupert and everything else. I don't disagree with what you said. The point that I want to make is that by virtue of the contract, the contracts are an essential aspect of the class. The prior class didn't have that contractual limitation, and Judge Gutierrez nixed it. By virtue of the contract, we have what he regarded as a sufficient causal nexus, making sure that everybody has the same interest. Now, if you contract with these facilities and these facilities close, you've lost that contract. But there are ways that you can contract around that. And that's why Southern California Gas emphasizes the difference between actions in tort and actions in contract. So if you had a contract, you could contract around it by guaranteeing some kind of minimal price. You have a way of doing that. Right. If you proceed in tort, then the defendant here is going to have to increase its liability insurance because its liability is nearly unlimited. Right. And that was of concern to the California Supreme Court. The contract at issue is the contract. When you're looking at it in this economic loss context through Southern California Gas eyes, the contract that we look at is the contract between Exxon, for example, and Planes. That's the contract that's at issue. And the question is whether or not that contract was intended to benefit Exxon's employees, those who service the platform. We would like to make that argument down below. We have yet to do that. When he analyzed, when Judge Gutierrez analyzed this down below, he said, I don't have to find the first issue, whether or not the transaction was intended to affect the plaintiffs. I can rely on factors two through six. Wouldn't, wouldn't, doesn't this somehow, doesn't the question, isn't the question going to come down to an examination of every individual contract? Aren't you going to have to look at Tractide's contract with the platform to decide whether, whether they are, have a special relationship with, with Planes? I don't think so, Your Honor. I mean, there is in, in California jurisprudence, which is of course what we're dealing with, California law, the Sentinella case makes it very clear that that issue of whether or not a transaction or a contract was, whether a transaction was intended to affect the plaintiff can be done on a class-wide basis. And they did so in Sentinella. It's a recent case, 2016. So the fact, the fact that you have to deal with. Was that a mass tort case? It was a, no, it was not. It was not a mass tort case. If, if it was an employment-related matter and it had to do with doctors being undermined by certain health plans that were, that they were the benefits. It was quite different from a mass tort case. And that, and the mass tort cases were of special concern to the California Supreme Court. I would say that's true. But I'm just not sure how you, how you can say a contract for fuel for Tractide is the same as any other contract. Let's say for a caterer who's providing, who's providing meals. I would agree with you. And if that's the case, then we're going to have to look at every individual contract to determine whether we have a special relationship. And if that's the case, then classification seems inappropriate. If you're going to look at, if you look at, if you, if, I understand why you're saying that. I would also say that what this case is about are many businesses that basically have gone belly up because they were, all of their work was dependent upon these platforms. When the platforms closed, they lost everything. Well, maybe that's the class you should be looking at and defining it in some different sort of way. I mean, I can imagine, you know, mom and pop stores up in Santa Barbara and Montecito that were dependent on this industry. And I don't know if that would even require a contract. I mean, you know, it seems confused to base your class on, your tort class on a contractual relationship when really what you're looking at were people that were dependent on the industry. And due to planes, alleged negligent management of the pipelines, they deteriorated and ruined these businesses. It's interesting that you say that, Your Honor, because that's exactly what we did the first time around. And Judge Gutierrez said you've gone way too far. That's too far. But this isn't? This case is not about, I mean, this case is not about telephone services. This case is about businesses and workers. You can't have telephone services if you have a contract. Yes. If I don't know if they have contracts with telephone companies, I don't I don't know if those would qualify as a contract. But assuming they did, I suggest to you, Your Honor, that that is the tail wagging the dog. We have entities, many of them that are desperate for a case for this case to proceed because they lost everything or they lost, you know, millions of dollars. Some because of the closure of these facilities. The contractual relationship is the nexus that Judge Gutierrez relied upon. And I would suggest to you that that contractual nexus provides the cohesive basis to keep the class together. I would also suggest a common if you had common contracts or similar contracts. That's why I suggested to Mr. Rowley that that perhaps perhaps the class could be narrowed to employees. You're still going to get a motion for summary judgment from the other side. Absolutely. But at least with the employees, I sort of know what I'm dealing with. But once I get beyond those 500 employees and have to deal with 500 other contracts, I have no idea beyond Tracktide Marine what you're dealing with. And you haven't been able to supply very much in detail. I mentioned AT&T. You didn't like me mentioning AT&T, but I have no idea whether AT&T has a contract with them or not. So are they in or are they out? Yeah, and the further problem is that some of the people in the classes it's defined weren't injured. And you can see that. Plains makes that argument, but I don't believe that that's the case. And this is an essential fact. And going back to my original comments about Rule 23B3 predominance, an essential fact here is the fact that these 10 facilities closed. They're closed. Anyone who worked there can no longer work there. All those people were injured. Whether or not they suffered damages, we're going to deal with that in a bifurcated way, which is what Judge Gouthiere has found, and it makes sense. But they were injured because they can't work there anymore. Those entities that supplied those facilities, they lost their contracts. They can't support the platforms anymore because the platforms are closed. This is a unique case where injury is very easily cabined because these facilities closed. That's true every time a business closes. And if a business closes, if a little mom and pop bakery closes, it's got suppliers that are going to be harmed. It's got employees who are going to be out on the streets looking for work. Do they have actions under California law for mismanagement of the bakery? I think this is a merits question, but I think after Southern California Gas, I think you're in deep trouble on that one. Here we have a company that engaged in criminal misconduct. Right. That's why you have a subclass of fishermen because they fall into a special class under the marine rules. And that's why you have a class of property owners who were directly injured by the leakage from the pipeline. Those appear to be recognized classes under California law. This is a sprawling class. But you haven't been able to help me. I've asked for a lot of help here, counsel. I've got to tell you very frankly, I don't think I got it. I'm sorry, Your Honor, but in terms of the help, all I can say is that we're talking about entities that supplied businesses that supplied these platforms. Many of them are companies that supplied employees to work on the platforms. I would say, however, obviously the court is concerned about the breadth of the class. I don't think it's as broad as Your Honors think it might be. But that said, to respond to your concerns, we could limit this class to just workers, just employees who worked on these facilities, as Your Honors have suggested. And if the court were to do that, I would urge you to remand with instructions. And I would go so far as to suggest that you could do this by moving the two words from the current class definition, which is and entities. So it would just be on behalf of the workers. You would have individuals who were employed or contracted to work on or to provide supplies, personnel, or services for the operations. So doesn't that then again broaden it, supplies, personnel, or services? The intention is not to broaden it. The intention is to get those who worked on these facilities. If that's what Your Honors think is the appropriate, most cohesive class, we're all for it. We want to represent as many people as we can in this class action. The alternative, of course, is to file individual suits. Well, counsel, I'm a little reluctant to sort of tinker with the class definition at this level and especially on this record. So I tried to suggest something to Mr. Rowley, suggested it to you. This feels like that's the kind of thing that probably has to be renewed before the district court if we were to reverse this. Rather than have us tinker with the mechanism. I understand why the court would not want to tinker, but obviously if you remanded with instructions, you know, not tinkering with, but describing your concerns such that we can try again. And, you know, I have no idea among the 500 employees whether they're all employees of the same entities or how many entities. Oh, I'm sorry. I didn't. I maybe I didn't. Maybe I misunderstood your question. There are, I believe, like 300 employees of Exxon. There were 150 or so employees of Freeport-McMoran. Less of Veneco than those numbers. This is the problem with your suggestion that we tinker with the definition is we don't have in front of us all the information to actually write a definition, a class definition that we think we would approve. So we just don't have the information to do it. And I would think you're best suited, but you went on and said remand with instructions anyway. What would those instructions be? The instructions would be to narrow the class so that only employees who actually worked on the platforms or facilities, processing facilities, are part of the class. Can you do that independent of the question as to whether there's a special relationship? Your Honor. I realize that bleeds over into the merits, but it seems to me that there's a little bit of circularity here in the recent decision from the California Supreme Court. Either you're right that SoCalGas nixes these claims, or you're wrong. It doesn't. But the point on Rule 23, and this is really what I wanted to say before in response to your questions. All that's up here is the propriety of class certification. And if you're right, then we'll lose as a class below. If you're wrong, we'll win. But the point is that Rule 23 makes sense here, given the commonality amongst class members. And that is certainly true if the class is limited to employees and workers. Thank you, Your Honors. I'd just like to address my friend's idea about limiting the class to just employees, because I think that on this record, the class still is limited in the way he suggests. And that's just putting aside, I think, the real problems with trying to consider a new class definition for the first time on appeal. But if you look at Dr. Rupert's analysis, which is only limited to employees, he concludes that only 34 percent of those employees would have suffered a job loss. So on the record before the Court, even if the class were limited, there wouldn't be enough evidence or the kind of common evidence to support it. So this issue would need to be presented to the District Court in the first instance. And our suggestion is that even that narrowed class wouldn't be susceptible of class treatment. I think that part of the problem is, my friend cited the Duke v. Walmart case, which is a commonality case, but I think Tyson's food is really more illuminating here. Because there the Court said that representative evidence or an expert analysis could be sufficient to support class certification. If the same evidence would be sufficient to support an individual claim, in here you don't have that. Think of it this way. If you had an individual worker who had brought an individual lawsuit against planes, and you offered up Dr. Rupert's expert analysis, it wouldn't show that he or she would have suffered job loss, and it certainly wouldn't address whether the worker suffered any other kind of economic injury. So this idea would need to be submitted to the District Court in the first instance. And the only other point I'd like to make is that the applicability of SoCalGas and the way that that decision changes the special relationship in the economic loss doctrine is before the Court. Judge Gutierrez does analyze special relationship in his class certification order. And we argued that the first factor was dispositive, and there's no reason to sort of weigh and balance and figure out whether those factors raise individual issues, and he disagreed and he weighed those factors. We submit that SoCalGas, that in light of SoCalGas, that analysis doesn't make any sense. And so we do think that the decision applies here. We do have a theory from the UCL cases that we think suffice to support reversal of the order. But the Court certainly could, if it wanted to, reach the issue of how SoCalGas applies. There are no further questions.
judges: Fernandez, Wardlaw, Bybee